# Commonwealth of Pennsylvania, Appellant, v. William C. Curry.

*Statutes—Construction of—Constitutional inhibition.*

Acts of assembly are to be construed liberally in respect to constitutional inhibitions rather than to embarrass by a construction of a strictness unnecessary to the accomplishment of the beneficial purposes for which such inhibition is imposed.

*Constitutional law—Title of act of June 26, 1895, sufficient.*

The Act of June 26, 1895, P. L. 317, known as the Pure Food Act is constitutional. The title to this act fairly gives notice of the provisions of the act so as reasonably to lead to an inquiry into the bill; it invites examination by the very words used.

*Statutes—The legislature may define terms raised by it.*

A construction put upon an act of the legislature itself, by means of a provision embodied in the same, that it shall or shall not be construed in a certain designated manner, is binding upon the courts although the latter without such a direction would have understood the language to mean something different.

*Criminal law—Adulteration of food—Act of 1895.*

The selling of "cotton seed oil" in packages labeled and marked "olive oil" is adulteration within the meaning of the Act of June 26, 1895, P. L. 317, as defined by clause 4, of section 3 of said act.

Argued March 17, 1897. Appeal, No. 22, Oct. T., 1897, by plaintiff, from judgment of Q. S. Chester Co., Oct. Sess., 1896, ———, setting aside verdict for defendant. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Indictment for violation of the pure food law. Before HEMPHILL, J.

The defendant kept a grocery in the borough of West Chester and was indicted in the quarter sessions for violation of the Act of June 26, 1895, P. L. 317, and upon trial was convicted upon two counts of the indictment. A motion was filed for a new trial and among other reasons therefor, the defendant contended that the act of assembly under which the indictment was framed is unconstitutional with respect to the offenses for which he was convicted. The court below in an opinion by HEMPHILL, J., reported in 6 Dist. Rep. 143, decided the title to

the act was defective and offended against sec. 3, art. 3 of the constitution of Pennsylvania.

The counts upon which defendant was convicted were, first, charging him with selling a certain adulterated article and compound as and for and in imitation of and under the name of olive oil, and second, selling a certain adulterated article and compound, being an inferior or cheaper substance and compound substituted for olive oil, as olive oil. The uncontroverted testimony was that the article sold was pure cotton seed oil and contained no olive oil whatever.

Verdict of guilty, which was set aside on motion for a new trial, and defendant discharged. Plaintiff appealed.

*Errors assigned* were (1) in holding the Act of June 26, 1895, P. L. 317, to be unconstitutional; (2) in discharging defendant.

*Wilmer W. MacElree*, district attorney, and *John P. Elkin*, deputy attorney general, with them *Joseph H. Shoemaker*, for appellant.—The constitutional provision that no bill except general appropriation bills shall be passed containing more than one subject, which shall be expressed in its title, should be and is liberally construed by the courts : Cooley's Constitutional Limitations, 5th ed. p. 173 ; Pim v. Nicholson, 6 Ohio, 176 ; Pierpont v. Crouch, 10 Cal. 315 ; Sedgwick on Construction of Statutory and Constitutional Law, 2d ed. p. 40. The title to an act of assembly need not be a complete index to its contents ; if it fairly gives notice of the subject of the act so as reasonably to lead to an inquiry into the body of the bill itself, it is all that is necessary : Com. v. Green, 58 Pa. 226 ; Yeager v.. Weaver, 64 Pa. 425 ; Allegheny County Home's Appeal, 77 Pa. 77 ; Mauch Chunk v. Magee, 81 Pa. 433. The pure food law of 1895 defines what adulteration is within the meaning of the act, and provides for the punishment of persons who offend against its provisions. The legislature had the unquestioned authority to provide a legal definition of what adulteration of food meant within the meaning of the law : Smith v. State, 28 Ind. 321 ; Herold v. State, 21 Neb. 50 ; People v. Clepperly, 101 N. Y. 634 ; Com. v. Dean, 80 Mass. 99. The legislative definition of the adulteration of food, as contained in the act of June 26, 1895, does not introduce any new or additional sub-

ject not clearly expressed in the title. The whole act treats of the adulteration of food and provides punishment for violation of its provisions. The learned judge of the court below misconceived the point decided in the case of Shivers v. Newton, 45 N. J. 469, which was particularly relied upon by him in his opinion. The question under consideration in the case at bar was not before the court in that case at all: Phillips v. Bridge Co., 2 Metcalf (Ky.), 219. If the court construes the constitutional provision raised in this case strictly, and reverses the rule to construe it liberally, many of the titles to acts of assenbly must be held to be defective.

*J. Frank E. Hause*, with him *Thomas W. Pierce*, for appellee.—The title does not fairly give notice of the subject of the act so as reasonably to lead to an inquiry into the body of the bill: Allegheny County Home's Appeal, 77 Pa. 77; Com. v. Samuels, 163 Pa. 283. The precise question here involved was ruled by the Supreme Court of New Jersey in the case of Shivers v. Newton, 45 N. J. Law Rep. 469.

OPINION BY ORLADY, J., April 19, 1897:

The defendant was convicted on an indictment framed under the Act of June 26, 1895, P. L. 317, in which it was charged that he " unlawfully then and there did sell and offer for sale, as and for, and in imitation of, and under the name of olive oil, used for food by man, a large quantity . . . . of a certain adulterated article and compound, the name and components of the said adulterated article and compound being to this grand inquest as yet unknown;" and in a second count "unlawfully did then and there sell and offer for sale, as and for olive oil, used for food by man, a large quantity . . . . of a certain adulterated article and compound, then and there being an inferior and cheaper substance and compound substituted for olive oil, the name and components of said adulterated, inferior and cheaper substance and compound being to this grand inquest as yet unknown."

The verdict was set aside and the defendant discharged by the court below; the reason given in an opinion filed was " As there was no evidence of the sale of an adulterated article of food, but, at most an imposition or deception, the sale of one

article under the name of another, and as the prohibition contained in clauses 2 and 4 of the 3d section are clearly not within the act as expressed in its title, and therefore unconstitutional, the verdict must be set aside and the defendant discharged."

The defendant sold " cotton seed oil " in packages labeled and marked " olive oil," and defends his conduct as lawful because the act of June 26, 1895, known as the pure food law, is misleading in that the title does not invite an examination of the body of the bill, in which, the offense charged is defined as an adulteration.

The learned judge in the opinion filed, says : " While the meaning of words depends upon popular usage, the legislature has the right to prescribe legal definitions of its own language. But admitting this right, do not the legislative definitions quoted introduce into the body of the act entirely new and additional subjects, not clearly or at all expressed in its title, and thus violate the 3d section of article III. of the constitution? Both, it is true, relate to food, but the title of the act is not to regulate the manufacture and sale of food, but is restricted to food of a certain character, namely, adulterated food which the article sold in this case was not." The last part of this statement begs the whole question, as by the act, it and all similar articles ( " 2d, if any inferior or cheaper substance or substances have been substituted wholly or in part for it." 4th, " if it is an imitation of or is sold under the name of another article "), are declared and defined to be adulterations within the meaning of the act.

It is conceded that the legislature has the right to prescribe the legal definitions of its own language. A construction put upon an act of the legislature itself, by means of a provision embodied in the same, that it shall or shall not be construed in a certain designated manner, is binding upon the courts although the latter, without such a direction, would have understood the language to mean something different: Endlich on Statutes, section 365.

It is legislative language we are to construe, and it must be received, not necessarily according to its etymological meaning, but according to its popular acceptation, and especially in the sense in which the legislature is accustomed to use the same words: Phila. & Erie R. R. Co. v. Catawissa R. R. Co., 53 Pa. 20.

The sense given to particular words by our great lexicographers is always entitled to weight, yet when a word is used in an act of assembly regard must be had to the circumstances surrounding its use: Penna. R. R. Co. v. Price, 96 Pa. 256.

It is contended that the term "adulteration" is given a special definition by the act, by which a new and additional subject is introduced, not clearly or at all expressed in the title, in contravention of the third section of art. III. of the constitution; "No bill except general appropriation bills, shall be passed, containing more than one subject, which shall be clearly expressed in its title."

We are not required to resort to the technical meaning and derivations of words as given in dictionaries to determine the legislative meaning, when the words are defined by statute, and in this case it is not inconsistent with the common acceptation.

The definition given to the word "adulteration" in this statute is so intimate and natural a connection, so evident an adjunct of the subject; and is so closely associated with the word to which it refers that it cannot be held an independent or separate subject, but fairly gives notice of the legislative purpose through the title.

The term adulteration is derived from the Latin adultero, which in its various inflections signifies to defile, to debase, to corrupt, to sophisticate, to falsify, to counterfeit, etc. The objects of adulteration are fourfold, namely, to increase the bulk or weight of the article; to improve its appearance; to give it a false strength; or to rob it of its most valuable constituents. All these adulterations are manifestly of a designedly fraudulent character, and therefore properly the subject of judicial inquiry: 1 Enc. Brit., Am. reprint (9th ed.), p. 152, title, Adulteration.

It was held, in Commonwealth v. Moore, 2 Pa. Superior Ct. 162, an act, the title to which was, "An act for the protection of livery stable keepers," was constitutional because the title fairly gives notice of the subject of the act, so as reasonably to lead to an inquiry into the provisions of the bill; which has repeatedly been held to be sufficient, as the title thus inducing examination accomplishes all that a more elaborate statement would give notice of: Millvale Borough v. Evergreen Ry. Co., 131 Pa. 1; Kelley v. Mayberry Township, 154 Pa. 440, and

Commonwealth v. Lloyd, 2 Pa. Superior Ct. 6, in which case " An act relating to the county commissioners of Cambria County " was sustained, though the second section fixed the salary of each commissioner, and the third section authorized them to employ a clerk at a fixed salary; and on appeal to the Supreme Court, 178 Pa. 308, the judgment of the Superior Court was affirmed for the reasons given.

In Commonwealth v. Robert Muir, 1 Pa. Superior Ct. 578, an act entitled " An act to regulate and license public lodging houses in the different cities of this Commonwealth " in which a "public lodging house" was specially defined in limitation of the common meaning of the words, was held valid and constitutional, and on appeal to the Supreme Court, 180 Pa. 47, that tribunal says, "We have considered the provisions of the act and are all of the opinion that the Superior Court was clearly right in holding that it is constitutional," though it contained subjects not technically covered by the title.

The title to this act " To provide against the adulteration of food, and providing for the enforcement thereof," would naturally invite inspection by any one engaged in the manufacture or sale of food, and desirous of knowing what was to be avoided in the making and trafficing in the multiform food products of this day.

The attempt to defraud the public in selling cotton seed oil under the guise of a higher priced article of an entirely different name is one of the many similar acts which necessitated the Pure Food law, and useful and honest legislation should not be defeated by too rigid an adherence to the letter of the constitution, or pretexts be caught at to avoid legislation when it can be fairly reconciled within constitutional limits. It is a cardinal rule that all statutes are to be so construed as to sustain rather than ignore them; to give them operation if the language will permit, instead of treating them as meaningless and invalid: Mauch Chunk v. McGee, 81 Pa. 433.

The title does not tend to mislead, as it invites examination by the very words used. " To provide against adulteration of food, and providing for the enforcement thereof;" which reasonably embraces every food product; the different classes, kinds, modes of manufacture, and as it was a proper subject for legislative action, all persons whether manufacturers or dealers

are attracted by the words of the title, to a critical examination into the provisions of the bill.

There has been a general disposition to construe the constitutional provision liberally, rather than to embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purposes for which it has been adopted: Cooley's Const. Lim., 175.

In addition to the reasons herein given we refer to Commonwealth v. Daniel D. Jones, post, 362, and Commonwealth v. Hufnal, ante, 301, filed at this term, in which cases the same subject is discussed.

We do not agree with the reasoning of the learned judge below, and think the title to this act fairly gives notice of the provisions of the act, so as reasonably to lead to an inquiry into the bill.

The assignments of error are sustained. The decree of the court below is reversed, and record remitted for further proceedings thereon.