# Commonwealth, Appellant, *v.* Fulton.

*Food law—Adulteration—Combination of boric acid and salt.*

A person may be convicted for a violation of the Act of May 13, 1909, P. L. 520, in selling an article of food and an article used for and entering into the composition of and intended for use as, an ingredient in the preparation of food, described as canning compound, which was adulterated in that it contained a proportion of boric acid. In such a case it is immaterial that the compound contained 95 per cent. of boric acid and only five per cent. of salt. Such a compound is an article "entering into the composition of, or intended for use as an ingredient in the preparation of food for man," and is adulterated within the meaning of the act.

*Constitutional law—Title of act—Act of May 13, 1909, P. L. 520.*

The Act of May 13, 1909, P. L. 520, entitled "An Act relating to food," etc., is sufficient in its title to give notice of its contents, and is constitutional.

Argued March 12, 1918. Appeal, No. 13, Oct. T., 1918, by plaintiff, from order of Q. S. Bedford Co., April Sessions, 1917, No. 24, sustaining motion in arrest of judgment in case of Commonwealth v. J. R. Fulton. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Indictment for selling a canning compound in violation of the Act of May 13, 1909, P. L. 520.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty. The court made an order sustaining defendant's motion in arrest of judgment.

*Error assigned* was the order of the court.

*Wm. M. Hargest,* Deputy Attorney General, and *A. H. Woodward,* with them *H. C. James,* District Attorney, and *Francis Shunk Brown,* Attorney General, for appellant.

Under the definition of "food" this compound must be considered food.

Common salt is food, and boric acid being added to the common salt in the preparation of the compound makes an adulterated food.

The compound being advertised for use in the preparation of food, is an "adulterated" food, within the meaning of the act: United States v. Forty Barrels, 241 U. S. 265.

If it is contended that this act of assembly is for any reason unconstitutional, the answer is found in the case of Commonwealth v. Pflaum, 50 Pa. Superior Ct. 55, 236 Pa. 294.

*Trafford N. Jayne,* with him *John H. Jordan,* for appellee, cited: Com. v. Pflaum, 236 Pa. 294; Rodebaugh v. Philadelphia Traction Co., 190 Pa. 358; Stull v. Reber, 215 Pa. 156; Com. v. Kevin, 202 Pa. 23.

OPINION BY HENDERSON, J., July 10, 1918:

The defendant was indicted for a violation of the Act of May 13, 1909, P. L. 520, in selling an article of food and an article used for, and entering into the composition of, and intended for use as, an ingredient in the preparation of food, described as "Mrs. Price's Canning Compound," which was adulterated in that it contained a proportion of Boric Acid. A verdict of guilty was returned by the jury and afterward judgment was arrested by the court and from that order the Commonwealth appeals. The title of the act is in part: "An act

relating to food; defining food, providing for the protection of the public health, and the prevention of fraud and deception, by prohibiting the manufacture or sale, the offering for sale or the having in possession with intent to sell, of adulterated, misbranded, or deleterious foods." The second section contains a definition of the word "food" as follows: "The term 'food' as used in this act shall include not only every article used as food by man but also every article used for or entering into the composition of or intended for use as an ingredient in the preparation of food for man." Prohibition against the use of boric acid is contained in section three which provides "that for the purpose of this act an article of food shall be deemed to be adulterated......5th. If it contains any added boric acid or borates," etc. The learned judge of the court below based the decision on a determination that the compound was not food and that it did not contain added boracic acid within the meaning of the act. It was shown by the Commonwealth that the compound was composed of boracic acid and salt: 94.93% of the former and 5.07% of the latter. The compound was sold in packages on which were labels which included among other statements the following:

"Mrs. Price's Canning Compound

"Manufactured by

"The Price Compound Company

"Minneapolis, Minn.

"May be used in canning all kinds of fruit, and is especially valuable for Corn, Beans, Peas, Asparagus, Tomatoes, Etc."

"May also be used in making Catsup, Sweet Pickles or anything that is liable to ferment. It saves money, time, labor, worry and insures the best results. See our receipt book for instructions on canning and pickling."

The contention of the Commonwealth is that the arti-

cle sold was food and that it was also used and intended
to be used as an ingredient in the preparation of food
for man, and was therefore, within the prohibition of the
statute.. It is conceded that the salt constituent of the
compound was an article of food but the learned judge
of the court below was of the opinion that in view of the
small proportion of the food product and the large pro-
portion of boric acid it ought to be assumed that
the law was not intended to apply to a, prepara-
tion composed almost wholly of an article which is
not food; that it could not consistently be held that 95%
could be added to 5% ; that the use of the word "added"
in the statute "in common parlance" signifies "to unite
the lesser in essence with the greater; the smaller in
volume, magnitude or importance with the larger."
Pursuing this line of argument with illustrations the
court reached the conclusion that the legislature never
had in mind such an article of commerce as is under
consideration in this case as an adulterated food.  This
construction, however, overlooks an important part of
the statute which covers every article "entering into the
composition of or intended for use as an ingredient in
the preparation of food for man."  In either case there-
fore, whether the article sold may be classed as food
or is merely a compound intended to be used in the com-
position of or as an ingredient in the preparation of
food if it contain a constituent the use of which is pro-
hibited in food it is within the purview of the statute.
We are unable to agree with the learned court that the
question must be disposed of on the basis of the propor-
tions of the compound entering into the composition of
food.   Under such construction the purpose of the law
might easily be defeated.  A much smaller quantity of
the prohibited article than that used in the canning com-
pound might be used without violating the statute.  If
the proportion of 95% may be allowed, by like reason-
ing 80% or 70% would be permitted, for the larger could
not be said to be added to the smaller quantity; the

smaller quantity could not "contain" the larger.  But it
was not the intention of the legislature to determine the
proportions in which food might be adulterated except
in the limited use of sulphur dioxide and sodium benzo-
ate as applied to certain articles.  The United States
statute contains language similar to that used in the
Act of 1909 and in United States v. Coca Cola Company,
241 U. S. 265, the court considered the meaning of the
word "added" and said: "Nor can we accept the view
that the word 'added' should be taken as referring to the
quantity of the ingredient used.  It is added ingredient
which the statute describes; not added quantity of in-
gredient."  This construction is required in the light of
the purpose of the legislation which was not only to
prevent fraud but to provide for the protection of the
public health.  What is necessary to promote this object
is a legislative question, within constitutional limits,
and the court is controlled by the legislative declaration
on the subject.  The combination of boric acid with
common salt amounts to an adulteration within the
meaning of the statute.  The term "adulteration" is used
in a particular sense.  It is the combining of a forbidden
substance with an article of food to be sold to the pub-
lic.  But the case of the Commonwealth stands on a
broader base than this.  The act defines "food" to be not
only every article used as food for man but also every
article entered into the composition of or intended for
use as an ingredient in the preparation of food for man.
It is not contended that the canning compound was not
to enter into the composition of food or intended for use
as an ingredient in the preparation of it.  The contrary
expressly appears.  It was not only to be used in the
preparation of food but was to become a constituent part
thereof.  It cannot be contended that when a quantity
of it was added to the can or jar in the preparation of
food it did not become a part of the contents of the can
or jar and of course it entered into the food preparation.
The letter of the statute prohibits this.  If it was within

the power of the legislature therefore to define what should be considered food the defendant offended against the law. It is not to be questioned that the legislature in passing an act may declare its meaning and construction and such declaration is binding on the courts: Com. v. Curry, 4 Pa. Superior Ct. 356; Com. v. Kebort, 212 Pa. 289. The definition of Section 2 of the act is sufficiently comprehensive to cover the case of a sale of this compound intended for use as an ingredient in the preparation of food. It is contended however, on the part of the appellee that the title of the statute is not sufficiently clear to meet the constitutional requirement. We are unable to agree with this contention. The title relates to food; to the protection of the public health by prohibiting the sale or offering for sale or having in possession with intent to sell adulterated or deleterious foods and gives notice that the act defines what shall be considered food. This title we regard as sufficiently comprehensive to impose the duty of inquiry as to the contents of the statute and persons dealing in food or in an article to be used in the preparation and composition of food are put on notice of all the statute contains. We are not required to apply critical or strained construction to legislation of this character nor are we at liberty to set aside the legislative will except from imperious necessity imposed by the Constitution. We find no such necessity in this case.

The judgment is reversed and the record remitted to the court below with direction to impose sentence according to law.