## Commonwealth *v.* Fulton, Appellant.

*Food law—Adulteration—Combination of boric acid and salt.*
1. A person may be convicted for a violation of the Act of May 13, 1909, P. L. 520, in selling an article of food and an article used for and entering into the composition of, and intended for use, as an ingredient in the preparation of food, described as a canning compound, which was adulterated in that it contained a proportion of boric acid. In such a case it is immaterial that the compound contained 95 per cent. of boric acid and only five per cent. of salt. Such a compound is an article "entering into the composition of, or intended for use as, an ingredient in the preparation of food for man," and is adulterated within the meaning of the act.

*Constitutional law—Title of act—Act of May 13, 1909, P. L. 520.*
2. The Act of May 13, 1909, P. L. 520, entitled "An Act relating to food," etc., is sufficient in its title to give notice of its contents, and is constitutional.

Argued Oct. 22, 1918. Appeal, No. 161, Jan. T., 1919, by defendant, from judgment of Superior Court, Oct. T., 1918, No. 13, reversing judgment of Quarter Sessions of Bedford Co., April Sessions, 1917, No. 24, sustaining motion in arrest of judgment in case of Commonwealth of Pennsylvania v. J. R. Fulton. Before BROWN, C. J., FRAZER, WALLING, SIMPSON and FOX, JJ. Affirmed.

Indictment for selling a canning compound or preservative in violation of the Act of May 13, 1909, P. L. 520.

Verdict of guilty. The trial court sustained defendant's motion in arrest of judgment.

On appeal by the Commonwealth, the Superior Court, in an opinion by HENDERSON, J., reversed the judgment of the trial court. The opinion of the Superior Court, reported in 70 Pa. Superior Ct. 95, is as follows:

The defendant was indicted for a violation of the Act of May 13, 1909, P. L. 520, in selling an article of food

and an article used for, and entering into the composition of, and intended for use as, an ingredient in the preparation of food, described as "Mrs. Price's Canning Compound," which was adulterated in that it contained a proportion of boric acid. A verdict of guilty was returned by the jury and afterward judgment was arrested by the court and from that order the Commonwealth appeals. The title of the act is in part: "An Act relating to food; defining food, providing for the protection of the public health, and the prevention of fraud and deception, by prohibiting the manufacture or sale, the offering for sale or the having in possession with intent to sell, of adulterated, misbranded, or deleterious foods." The second section contains a definition of the word "food" as follows: "The term 'food' as used in this act shall include not only every article used as food by man but also every article used for or entering into the composition of or intended for use as an ingredient in the preparation of food for man." Prohibition against the use of boric acid is contained in section 3 which provides "that for the purpose of this act an article of food shall be deemed to be adulterated......5th. If it contains any added boric acid or borates," etc. The learned judge of the court below based the decision on a determination that the compound was not food and that it did not contain added boric acid within the meaning of the act. It was shown by the Commonwealth that the compound was composed of boracic acid and salt; 94.93% of the former and 5.07% of the latter. The compound was sold in packages which included among other statements the following:

"Mrs. Price's Canning Compound
"Manufactured by
"The Price Compound Company
"Minneapolis, Minn.

"May be used in canning all kinds of fruit, and is specially valuable for corn, beans, peas, asparagus, tomatoes, etc."

"May also be used in making catsup, sweet pickles or anything that is liable to ferment. It saves money, time, labor, worry and insures the best results. See our receipt book for instructions on canning and pickling."

The contention of the Commonwealth is that the article sold was food and that it was also used and intended to be used as an ingredient in the preparation of food for man, and was, therefore, within the prohibition of the statute. It is conceded that the salt constituent of the compound was an article of food, but the learned judge of the court below was of the opinion that in view of the small proportion of the food product and the large proportion of boric acid ·in the compound it ought to be assumed that the law was not intended to apply to a preparation composed almost wholly of an article which is not food; that it could not consistently be held that 95% could be added to 5%; that the use of the word "added" in the statute "in common parlance" signifies "to unite the lesser in essence with the greater; the smaller in volume, magnitude or importance with the larger." Pursuing this line of argument with illustrations the court reached the conclusion that the legislature never had in mind such an article of commerce as is under consideration in this case as an adulterated food. This construction, however, overlooks an important part of the statute which covers every article "entering into the composition of or intended for use as an ingredient in the preparation of food for man." In either case, therefore, whether the article sold may be classed as food or is merely a compound intended to be used in the composition of or as an ingredient in the preparation of food, if it contains a constituent the use of which is prohibited in food it is within the purview of the statute. We are unable to agree with the learned court that the question must be disposed of on the basis of the proportion of the compound entering into the composition of food  Under such construction the purpose of the law might be defeated. A much smaller quantity of the pro-

hibited article than that used in the canning compound might be used without violating the statute. If the proportion of 95% may be allowed, by like reasoning 80% or 70% would be permitted for the larger could not be said to be added to the smaller quantity. The smaller quantity could not "contain" the larger. But it was not the intention of the legislature to determine the proportion in which food might be adulterated except in the limited use of sulphur dioxide and sodium benzoate as applied to certain articles. The United States statute contains similar language to that used in the Act of 1909 and in United States v. Forty Barrels of Coca Cola, 241 U. S. 265, the court considered the meaning of the word "added" and said "Nor can we accept the view that the word 'added' should be taken as referring to the quantity of the ingredient used. It is added ingredient which the statute describes; not added quantity of ingredient." This construction is required in the light of the purpose of the legislation which was not only to prevent fraud but to provide for the protection of the public health. What is necessary to promote this object is a legislative question within constitutional limits and the court is controlled by the legislative declaration on the subject. The combination of boric acid with common salt amounts to an adulteration within the meaning of the statute. The term "adulteration" is used in a particular sense. It is the combining of a forbidden substance with an article of food to be sold to the public. But the case of the Commonwealth stands on a broader base than this. The act defines "food" to be not only every article used as food for man but also every article entering into the composition of or intended for use as an ingredient in the preparation of food for man. It is not contended that the canning compound was not to enter into the composition of food or not intended for use as an ingredient in the preparation of it. The contrary expressly appears. It was not only to be used in the preparation of food but was to become a constituent

part thereof. It cannot be contended that when a quantity of it was added to the can or jar in the preparation of food it did not become a part of the contents of the can or jar and of course it entered into the food preparation. The letter of the statute prohibits this. If it was within the power of the legislature, therefore, to define what should be considered food the defendant offended against the law. It is not to be questioned that the legislature in passing an act may declare its meaning and construction and such declaration is binding on the courts: Com. v. Curry, 4 Pa. Superior Ct. 356; Com. v. Kebort, 212 Pa. 289. The definition of section two of the act is sufficiently comprehensive to cover the case of a sale of this compound intended for use as an ingredient in the preparation of food.

It is contended, however, on the part of the appellee that the title of the statute is not sufficiently clear to meet the constitutional requirements. We are unable to agree with this contention. The title relates to food; to the protection of the public health by prohibiting the sale or offering for sale or having in possession with intent to sell adulterated or deleterious foods. This title we regard as sufficiently comprehensive to impose the duty of inquiry as to the contents of the statute and persons dealing in food or in an article to be used in the preparation and composition of food are put on notice of all the statute contains. We are not required to apply critical or strained construction to legislation of this character nor are we at liberty to set aside the legislative will except from imperious necessity imposed by the Constitution. We find no such necessity in this case.

The judgment is reversed and the record remitted to the court below with direction to impose sentence according to law.

*Error assigned* was the judgment of the Superior Court.

*Trafford N. Jayne,* with him *John H. Jordan,* for appellant.—Even though the word "food" is defined to include articles not regularly intended for, or used as, foods, such as condiments, coloring and flavoring matter, appetizers and the like, it was not intended by the legislature to include preservatives of foods when sold by themselves separately.

The intent of the legislature is evident, because of the fact that it does not mention the word "preservatives" anywhere in the act. If the legislature had intended to include preservatives in its definition of the word "food" it would have added the words "and preservation" so as to read: "or intended for use as an ingredient in the preparation and preservation of food for man." The very fact that those two words were left out should be almost conclusive evidence on that point: Redman's App., 173 Pa. 59; Little Beaver Twp. School Directors' Election, 165 Pa. 233; Shrewsbury Savings Institution's App., 94 Pa. 309.

*Wm. M. Hargest,* Deputy Attorney General, and *A. H. Woodward,* with them *H. C. James,* District Attorney, and *Francis Shunk Brown,* Attorney General, for appellee.—This compound, being advertised for use in the preparation of food, is an "adulterated" food, within the meaning of the act: Commonwealth v. Pflaum, 236 Pa. 294; United States v. Forty Barrels of Coca Cola, 241 U. S. 265; Price v. Illinois, 257 Ill. 101.

The title to this act is sufficient: Commonwealth v. Pflaum, 236 Pa. 294.

PER CURIAM, January 4, 1919:

The judgment of the Superior Court is affirmed on its opinion reversing the Court of Quarter Sessions and remitting the record with direction that sentence be imposed according to law: Commonwealth v. Fulton, 70 Pa. Superior Ct. 95.