Commonwealth *v.* Massini, Appellant.

Argued December 10, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*John P. Thomas,* with him *Walker & Walker,* for appellant.

*Richard F. Stevens,* Assistant District Attorney, with him *George J. Joseph,* District Attorney, for Commonwealth, appellee.

OPINION BY WOODSIDE, J., March 19, 1963:

This is an appeal from a sentence imposed upon the defendant for the violation of §941 of The Penal Code of June 24, 1939, P.L. 872, 18 P.S. §4941.

This section provides that "Whoever wilfully and maliciously kills, maims or disfigures any domestic animal of another person, or wilfully and maliciously, administers poison to any such animal, or exposes any poisonous substance, with intent that the same shall be taken or swallowed by animals, fowl or birds, is guilty of a misdemeanor, . . .".

The Statutory Construction Act of May 28, 1937, P.L. 1019, §101, 46 P.S. §601 provides: "The following words and phrases, when used in any law hereafter enacted, unless the context clearly indicates otherwise, shall have the meanings ascribed to them in this section: . . . (37) 'Domestic Animal,' any equine animal, bovine animal, sheep, goat and pig."

The defendant shot and killed his neighbor's cat. A cat is not one of the animals defined in the Statutory Construction Act, supra, as a "domestic animal." The legislature has directed us to accept the definitions of the Statutory Construction Act when used in any law thereafter enacted, unless the context clearly indicates otherwise. The relevant part of the section, which the defendant stands convicted of having violated, must therefore be read as follows: "Whoever wilfully and maliciously kills any equine animal, bovine animal, sheep, goat or pig of another person is guilty of a misdemeanor". It is evident, of course, that the defendant by shooting a cat did not violate such provision.

The court below submitted to the jury whether the dead cat had been a domestic animal, ignoring the statuory definition of such animal. In its opinion, the court attempted to demonstrate that some cats, including the one that was shot, can fall within the dictionary definitions of domestic animal. That is not the issue. When the legislature defines the words it uses in a statute, neither the jury nor the court may define them otherwise. *Commonwealth v. Fulton,* 70 Pa. Superior Ct. 95, 100, affirmed in 263 Pa. 332, 106 A. 636 (1919); *McElhone v. Philadelphia Quartette Club,* 53 Pa. Superior Ct. 262, 268 (1913).

The legislature may create its own dictionary, and its definitions may be different from ordinary usage. When it does define the words used in a statute, the courts need not refer to the technical meaning and derivation of those words as given in dictionaries, but must accept the statutory definitions. *Sterling v. Philadelphia,* 378 Pa. 538, 542, 106 A. 2d 793 (1954); *Hughes v. Pittsburgh,* 379 Pa. 145, 148, 108 A. 2d 698 (1954); *Commonwealth v. Curry,* 4 Pa. Superior Ct. 356, 360 (1897); *McElhone v. Philadelphia Quartette Club,* supra, 53 Pa. Superior Ct. 262, 268 (1913).

The courts of quarter sessions are divided on whether killing a cat or a dog is a violation of §941 of The Penal Code, supra, 18 P.S. §4941. See *Commonwealth v. Mainero*, 21 Pa. D. & C. 2d 239 (Luzerne County) (1960); *Commonwealth v. Wilt & Cope*, 28 Lehigh Co. L. J. 460 (1960); *Commonwealth v. Fries*, 14 Pa. D. & C. 2d 622 (Sullivan County) (1958).

The court below following and quoting from *Commonwealth v. Fries*, supra, thought that it could ignore the statutory definition of a domestic animal because of the provision in §33 of the Statutory Construction Act that "Words and phrases shall be construed . . . according to their common and approved usage; . . ." This interpretation would make useless all the statutory definitions formulated by the legislature. But the court below and the court in the *Fries* case quote only part of §33, and end the quotation with a period where there is none. The legislature, as clearly as it was possible to do, *expressly exempted* the above quoted provision from application to statutory definitions, for it continues in the same sentence by saying "but . . . words . . . defined in this act, shall be construed according to such . . . definition." The Statutory Construction Act, supra, §33, 46 P.S. §533.

The court below said it was "of the opinion that the Legislature definitely intended to afford protection to domestic animals generally rather than to the limited group named in the Statutory Construction Act," and thereupon concluded that "the context [of §941 of The Penal Code, supra,] clearly indicates" that the legislature did not intend to apply its own definition. The court's reference is not to the "context" of the act, but to the "opinion" or mind of the judge. A reference to the context of §941 of The Penal Code, supra, gives the Commonwealth no help, for the legislature demonstrates its precision and discernment by applying two parts of the section to domestic animals and the third

part to all animals and to fowl and birds. The legislature also demonstrated its knowledge of the common law relating to dogs and cats by specifically including them in the definition of domestic animals when it intended them to fall within that definition. See §1 of the Act of July 22, 1913, P.L. 928.

The omission of cats from the definition of domestic animals was not a mere oversight by the legislature, but was based upon long recognized law. At common law a cat could not be the subject of larceny, having no intrinsic value in the eyes of the law. But this is not important, for, as we have seen, the legislature may, for reasons of its own, define a word differently than it is generally used or defined. " 'The legislature must be intended to mean what it has plainly expressed, . . . It matters not, in such a case, what the consequences may be.' " *Orlosky v. Haskell,* 304 Pa. 57, 62, 155 A. 112 (1931).

The application of the established rules of statutory construction and the clear language of the legislature leave no doubt concerning the *expressed* intent of the legislature, but should there be any doubt, we must remember that we are dealing with a criminal statute, and that criminal statutes must be strictly construed. The Statutory Construction Act of May 28, 1937, P.L. 1019 §58(1), 46 P.S. §558(1); *LaBrum v. Commonwealth Title Co.,* 358 Pa. 239, 243, 56 A. 2d 246 (1948); *Waterbor, Inc. v. Livingood,* 179 Pa. Superior Ct. 610, 616, 117 A. 2d 790 (1955).

If the legislators wish to make it a violation of §941 of The Penal Code, supra, to kill a cat, they can easily do so, but the decision must be theirs and not ours. The judges of this Commonwealth cannot decide what acts should be crimes regardless of how immoral or wicked we might think them to be. If the act which a person commits is not a crime at common law

and the legislature has not clearly declared that act to be a crime, we have no power to make it a crime.

As killing a cat is not a violation of the section of The Penal Code which the defendant was convicted of violating, he must be discharged. Having reached this conclusion, we need not refer to the other objections raised by the appellant to his conviction and sentence.

Judgment of sentence is arrested and the defendant discharged.