**Boron Oil Company Appeal**

667

Before McBride, Beck and Ridge, JJ.

*Donald L. Very* and *Campbell, Thomas & Burke,* for plaintiff.

*Melvin Schwartz,* for defendant.

RIDGE, J., May 29, 1964.—This matter is before us on exceptions filed by Boron Oil Company (Boron) to an order of this court, dated and entered February 11, 1964, sustaining the action of the Board of Adjustment of the Township of Scott (Board) in dismissing Boron's appeal from the refusal of the township building inspector to grant a permit for the erection of a gasoline service station.

The board made no record of the proceedings before it. On hearing the appeal, this court took additional testimony. After careful consideration of the arguments and briefs of counsel, the matter was decided by an order without the filing of any formal findings of fact and conclusions of law. In doing so the court felt that it was clear to all concerned that there were only minor, insignificant differences between the parties on the facts. It was also felt that the order which was subsequently entered clearly implied that the three

legal points presented by the appeal, which are hereinafter discussed, were being decided in the board's favor.

However, in view of the filed exceptions, and largely on the basis of stipulations entered into by both counsel subsequent to the hearing on these exceptions, we will make the following

*Findings of Fact*

1. Appellant, Boron Oil Company, is a corporation duly organized and existing under and by virtue of the laws of the State of Ohio, and is duly authorized to transact business as a foreign corporation in the Commonwealth of Pennsylvania, maintaining a principal office at 1120 Perry Highway, Pittsburgh, Pa. 15237.

2. The Board of Adjustment of the Township of Scott is organized pursuant to the First Class Township Code of June 24, 1931, P. L. 1206, art. XXXI, sec. 3107, as amended May 27, 1949, P. L. 1955, sec. 59, and August 25, 1959, P. L. 760, 53 PS §58107.

3. On May 8, 1962, appellant entered into a certain option agreement with Harold F. Rink and Kathleen Rink, his wife, for the purchase of certain real estate located at 1838 Cochran Road, Scott Township, Allegheny County, Pa. This property is located at the intersection of Cochran and Roessler Roads in said township, and fronts approximately 155 feet on Cochran Road, which is a four-lane State highway, and approximately 200-205 feet on Roessler Road, and has erected thereon a dwelling house. Because of the terrain of the area, the dwelling house sits well above the level of Cochran Road, between 30 and 35 feet.

4. At the time the aforesaid option agreement was entered into, the subject property was zoned "residential" under the then applicable Scott Township zoning ordinance, and under the terms of the option agreement the appellant was required to secure the neces-

sary building permit for the erection of a Boron service station on the property.

5. On October 9, 1962, the Commissioners of the Township of Scott enacted its present master zoning ordinance, effective October 19, 1962, under which the area in which the subject property was zoned "C-2 Light Commercial District." The uses outlined in said district are as follows:

"Par. 641, C-2, Permitted Uses, In Light Commercial Districts, only the following buildings and uses are permitted:

"1. (a) All uses permitted in C-1 Districts;

"(b) All uses permitted in R-1, R-2, and R-3 Districts by special exceptions.

"2. Stores and shops for the conducting of retail business.

"3. Restaurants, cafes, tearooms, night clubs and similar establishments.

"4. Fraternities, clubs and lodges, providing such organizations do not engage in a service customarily carried on as a business or operated primarily for financial gain.

"5. Service establishments, including barber and beauty shops, tailor shops, shoe repair and dry cleaning operations in which only non-explosive and noninflammable solvents and materials are used and no work is done on the premises for retail outlets elsewhere.

"6. Hotels and motels.

"7. Theaters and assembly halls.

"8. Transportation depots, limited to the conduct of passenger service and not including facilities for the use of common carriers engaged in the storage, consignment or shipping of freight.

"9. Printing establishments.

"10. Automobile sales, including incidental and minor repairs and service and display of vehicles for

sale when conducted in a structure. This shall not include used automobile sales unless conducted within the confines of a structure."

6. On October 26, 1963, appellant filed with the building inspector of Scott Township its application for a building permit, specifying a contemplated use which would not be permissible under a C-2 classification. The application was refused. On the same date, appellant filed its appeal to the board of adjustment.

7. Thereafter, on December 20, 1962, a hearing was held before the board of adjustment on the denial of the building permit.

8. First notice to appellant of any decision by the board took the form of a letter from appellant's counsel dated March 12, 1963. This was sent in reply to two letters from appellant's counsel dated March 8, 1963, addressed to the board's counsel and to its president demanding that a permit be issued.

9. The letter of March 12, 1963, did not specify the basis of the board's decision.

10. Appellant's petition for appeal was filed in this court on April 10, 1963, within 30 days of the date the letter was received from the board.

11. At the time that the application for building permit was filed, October 26, 1962, and at the time the hearing before the board of adjustment was held, December 20, 1962, the following structures and land uses were present in the area of the subject location, all of which front on Cochran Road, on the same side as the subject location:

Commencing at the intersection of Cochran Road and Robinwood Drive, generally east of the subject location, there is a Loblaw Shopping Center, to the rear of which is located Paul Manor, an apartment house complex. Next, coming west along Cochran Road toward the subject location, is an American Oil Company service station; next is an Atlantic Refining Com-

pany service station. There follows an expanse of unimproved hillside, which extends from the Atlantic station to the subject location; to the rear of the subject location is the Beth El Congregation and School; across Roessler Road is a large parking area for the Shopping Center which is constructed to the rear of the parking area; next is Stouffer's Restaurant, which was constructed and completed in the Spring of 1963. Continuing westwardly in Cochran Road, approaching the turn-off to Greentree Road, are the following, still on the same side of Cochran Road as the subject location: a Gulf Oil Company service station; an office building; the Colony Restaurant and Bar, and a "Dairy Delight" ice cream stand.

12. The owners of the subject location, Harold F. Rink and Kathleen O. Rink, his wife, purchased the real property in 1954. At the time of purchase, the area was zoned residential. The only uses in the area at that time, other than the residence on the Rink property at 1838 Cochran Road, were the Gulf Oil Company service station to the west of the Rink property, near the turn-off to Greentree Road, and a cottage where the Stouffer's Restaurant is now located. None of the commercial uses now located in the area and shown on plaintiff's exhibits 9 and 10, other than the Gulf station, were present.

13. After the Rinks purchased the property, the other commercial uses arose in the following order: Paul Manor, the apartment house complex; next, the Loblaw Shopping Center; the American Oil Company station; the Shopping Center, across Roessler Road from the Rink property, and the Atlantic service station were constructed at about the same time. Stouffer's Restaurant was completed in the Spring of 1963, after the subject building permit was refused, and the hearing held before the board of adjustment.

14. All properties in the vicinity of the subject property which are mentioned in finding of fact no. 11 are presently being used in conformity to the zoning ordinance except the three properties whose use as gasoline service stations antedate the present zoning ordinance and whose operation continue as non-conforming uses.

15. The answer of the board of adjustment, together with the return of the board, was served on counsel for appellant on August 31, 1963, and filed. Exhibit 4 thereof is a copy of the board's opinion which indicates that the application for a building permit was refused because the applicable zoning classification did not permit a use of the type specified in the application.

16. At all times herein material, plans and specifications for the proposed Boron service station were on file with the building inspector and the Board of Adjustment of Scott Township.

17. The use of appellant's property as a gasoline service station would tend to affect unfavorably the flow of traffic upon a highway serving a substantial, presently compact, but growing commercial district in which appellant's property is located.

18. The attraction to vehicular traffic of another gasoline service station in a substantial, presently compact, but growing commercial area and the increase in the number of access points of ingress and egress thereto is substantially related to preserving and promoting safety and serving the general welfare in the use of public highways.

### Discussion

This appeal is from a decision of the board of adjustment sustaining the action of the township building inspector in refusing to issue Boron a permit to construct a gasoline service station at the corner of Cochran and Roessler Roads in Scott Township. The board's answer to the petition for appeal indicates that the decision of the board was "based upon the fact that ap-

pellant was attempting to construct a service station in an area which was not properly zoned for service stations." The return contains a copy of the board's opinion stating the following reason for its affirmance of the building inspector's action:

"The subject property is located in a C-2 zoning area, in accordance with the Master Zoning Ordinance and the Zoning Map of the Township of Scott. (See Section 641 of the Zoning Ordinance.) The C-2 classification does not permit the building of a service station. Service stations are specifically permitted only under the C-3 classification or the industrial classification. As the Ordinance is clear, and as said Ordinance was adopted prior to the application, a Permit to erect an establishment classified under C-3 uses in a C-2 district was properly denied by the Building Inspector."

Appellant attacks the action of the board on three different grounds which we will consider in the order of presentation.

## I.

### Concerning The Alleged Failure of The Board to Give Notice of its Decision

On October 26, 1962, the appellant made application to the building inspector of Scott Township for a building permit for the erection of a service station. On the same date, the inspector refused to issue the permit and appellant immediately filed an appeal to the board. On December 20, 1962, a hearing was held on the appeal.

On March 8, 1963, counsel for the respective parties had a telephone conversation concerning the matter. Later that day appellant's counsel mailed to opposing counsel and to the board letters whose language seem to support the contention that no notice of any decision had as yet been communicated to the applicant. On March 12, a reply was sent by the board's counsel, advising that a check of the files showed a decision to have been rendered on January 8, 1963. This, the first writ-

ten notice of the decision, was mailed to appellant 82 days after the board heard the appeal.

Appellant points out that section 3107 of the First Class Township Code was amended by the Act of August 25, 1959, P. L. 760, to read, in pertinent part, as follows:

"(53 PS §58107)

"(f) The board of adjustment shall fix a reasonable time for the hearing of the appeal, give public notice thereof, as well as due notice to the parties in interest, and decide the same within forty-five days after the hearing or if said hearing is continued within forty-five days after said continued hearing. If the board of adjustment does not make a decision within forty-five days after the hearing or continued hearing, it shall be deemed that such board has decided in favor of the person or the township officer aggrieved or affected who is seeking relief. . . ."

"(h) . . . Notice of such decision shall forthwith be given to all parties in interest."

Appellant contends that the quoted section requires the appeal should be sustained, reasoning that even if the decision by the board was rendered within the 45 day period, notice thereof, which it deems an essential constituent of the decision, was not given until after the 45-day period had elapsed. The board replies that the above-quoted section does not "make mandatory that notice be given within forty-five days . . . and if such notice is not given of the Board's decision, such section does not provide that a penalty clause will be invoked whereby, regardless of the merits of the case, the appellant would be permitted to violate the Zoning Ordinance, especially where no prejudice has been shown." The board further suggests that the code does not prescribe "such drastic results" if notice is not given within the 45-day period, and that the amendment does not in fact change existing law with respect

to the giving of notice. It concedes only that, in the absence of any prejudice, and none is here shown to exist, appellant is benefited merely to the extent that the time for filing an appeal does not commence to run until notice is given.

In our consideration of the appellant's argument, we observe that "the fundamental rule of construction, to which all other rules are subordinate, is that the Courts must, by all aids available, ascertain and give effect to the intention of the Legislature as expressed in a statute. . . ." It has been held a cardinal rule that the object of all interpretations in construction of statutes is to ascertain and effectuate the intention of the Legislature, even though such construction may seem contrary to the letter of the statute: 34 P. L. Encyc., Statutes, §121. " 'The Legislature must be intended to mean what it has plainly expressed. . . . It matters not, in such a case, what the consequences may be.' ": Commonwealth v. Massini, 200 Pa. Superior Ct. 257, 261 (1963).

As appellant's brief observes, "where a statute is clear, precise and unambiguous, there is no need for judicial interpretation of such statute, as the words mean what they say." Before the amendatory act, no. 268 of the 1959 sessions section 3107 (f) imposed upon the board the obligation to decide an appeal within a reasonable time. The amendment dropped the last two words of the underlined phrase and substituted in lieu thereof the following:

"(f) . . . forty-five days after the hearing or if said hearing is continued within forty-five days after said continued hearing. If the board of adjustment does not make a decision within forty-five days after the hearing or continued hearing, it shall be deemed that such board has decided in favor of the person or the township officer aggrieved or affected who is seeking relief. . . ."

Paragraph (h) of this section which contained the provision that "Notice of such decision shall forthwith be given to all parties in interest" was *not* amended by the 1959 act.

As amended, then, the act plainly and clearly imposed upon the board the obligation "to decide" the appeal within 45 days, with the added consequence that if they did not "make a decision" within that time, appellant would be deemed to have prevailed. Black's Law Dictionary, 3rd ed., defines *decisions* as "a judgment or decree pronounced by a court in settlement of a controversy submitted to it and by way of authoritative answer to the questions raised before it." It is also a "judgment given by a competent tribunal." A *decision* or judicial decision means, strictly speaking, the last act of the court, or, in other words, the judgment or conclusion: 21 C.J.S., Courts §181. We find nothing from these sources which suggests that the pronouncement of the body to whom the matter has been presented need be transmitted to the parties involved before it attains the status of a decision, although it is mere routine to give notice of the entry of a decision with reasonable promptitude after its pronouncement. That the two acts of determination and notice are usually closely coupled is no reason to lose sight of the precise meaning which each of the words presents. As corroborative evidence that the legislature employed the words *decide* and *decision* with terminological exactitude, it is to be noted that another paragraph of the section contains the additional provision calling specifically for the giving of notice. The inference is clear that the legislature recognized that *decision* did not comprehend, per se, "notice to the parties".

We are not impressed by the argument, supported by a resume of legislation proceedings concerning the amendatory act, that the appellant's position is aided by the fact that the amendments were adopted, without

debate, unanimously. Where the language of a statute is plain, concise and clear in meaning, the courts will not resort to legislative history in order to interpret its meaning, and therefore cannot vary the statute by resorting to the reports of legislative commissions or legislative journals or other familiar aids to statutory construction: 34 P. L. Encyc., Statutes, §153. Moreover, aside from the obvious undesirability of this approach where the language as here is explicit, we are unable to see where the absence of any debate is particularly illuminating or helpful.

Appellant also suggests that the board by *never* notifying the person aggrieved of its decision could cause great loss in time, expense and inconvenience. This could conceivably happen but the present matter does not present such a case. The matter is not decided on speculative possibilities but on actualities. The flaw of human error affords no warrant, under the circumstances presented, for appellant's relief.

The only Supreme Court decision which is concerned with the statute, Beverly Building Corp. v. Lower Merion Township Board of Adjustment, 409 Pa. 417 (1963), affirming per curiam 28 D. & C. 2d 761, is of no help to appellant in the present matter since the court there concluded that the appeal had been decided and the opinion issued within the 45-day period.

Although our conclusion is that the board complied with the provisions of the statute in that it "decided" the appeal within the time limit, it does appear that the board failed to comply with the provisions of paragraph (h) in that notice of the decision was not given "forthwith". This failure, for which the board's counsel seeks to assume the blame, does not, under the statute, produce a default decision for appellant. We have found no prejudice to the appellant by reason of what appears to be a regrettable, but nevertheless easily understandable, human error. In view of the obvious importance

of zoning regulations and their widespread impact upon community life in vital areas affecting health, safety and welfare, the notion is grossly repugnant to us, particularly in the absence of evidence of any resultant prejudice, that the law should, under the present circumstances, as appellant suggests, work a default judgment which would have the effect of treating the matter as almost a private affair between the board and the applicant. The law, with a tolerance founded in reason, and with a recognition of the need to maintain the necessary balance between public and private interests, must be interpreted so as to lessen the possibility of interfering with the orderly operation of a comprehensive zoning plan.

## II.

*Was the Notice of Decision Received By the Appellant So Inadequate Under the Law As To Warrant a Reversal of the Board's Decision?*

Appellant contends that the notice which it received in the form of a letter from the board's counsel, dated March 12, 1963, advising that the decision had been made on January 8, 1963, denying the appeal was legally insufficient. This would appear to be true for it contained no reasons for the decision, no findings of fact, no conclusions of law nor anything of substance which would indicate the basis of the board's action. Since no record of proceedings before the board was made, we are unable to say to what extent the dispute between the applicant and the building inspector had been narrowed at the hearing. However, it does not appear that the applicant was in any way harmed by the board's neglect to initially particularize the basis for its decision. Upon receipt of the March 12th letter, the applicant on April 10, 1963, presented a petition for appeal which, on the same date, was allowed. On September 6, 1963, the board filed its return including its opinion setting forth the reason for its affirmance of the

building inspector's refusal to issue the permit. Furthermore, in paragraph IV of the board's answer, filed September 11, 1963, there is set forth the simple basis for refusal, i.e., that the building permit application contemplated a use not permitted under the applicable zoning ordinance.

Thereafter, until the hearing was concluded on the matter, appellant offered no substantial evidence of prejudice as a result of the deficiency originally appearing in the board's action and made no request to amend his petition for appeal. No serious objection was made by the board to the receipt of any evidence offered by appellant and liberality was shown by the court in receiving the evidence preferred. A full and complete airing was had on the merits of appellant's case. Had the court been of the opinion that the basis for the board's action was not clear, it would have sent the entire matter back to the board for a statement of its reasons but it was plainly evident from the pleadings why the board acted as it did.

It seems desperately hypertechnical to us to suggest that this serious matter be resolved in appellant's favor where the shortcomings found in the board's actions were subsequently erased and where in the completed proceeding there was no recognizable disadvantage suffered by appellant. The law's flexibility and its ability to accommodate itself to false starts and minor, legally harmless errors is well illustrated in the case at bar.

### III.

*Is the Board's Decision, Under the Circumstances, Unreasonable, Arbitrary, Discriminatory, Confiscatory, Capricious, An Abuse of Discretion or Otherwise Unlawful?*

Appellant's third argument consists of an attack upon the constitutionality of the Scott Township Zoning Ordinance in its application to the subject property.

Appellant prefaces his argument with extracts from the many appellate court cases which bespeak the rights of owners of property. Unquestionably, the reported cases reveal how, in our highly urban society, many property owners are increasingly vexed by land-use regulations, particularly zoning regulations. The difficult efforts to secure a proper balancing of private and public interests have provoked much litigation and produced many statements similar to this from Colligan Zoning Case, 401 Pa. 125 (1960), where, quoting from earlier cases, the court said at page 131:

" '. . . an owner of property is still entitled in Pennsylvania to certain unalienable constitutional rights of liberty and property. These include a right to use his own home in any way he desires, provided he does not (1) violate any provision of the Federal or State Constitutions; or (2) create a nuisance; or (3) violate any covenant, restriction or easement; or (4) violate any laws or zoning or police regulations which are constitutional. It is now well settled that zoning acts and ordinances passed under them are valid and constitutional as structural or general legislation whenever they are necessary for the preservation of public health, safety, morals or general welfare, and not unjustly discriminatory, or arbitrary, or unreasonable, or confiscatory in their application to a particular or specific piece of property. . . .' "

The dimensions of the Herculean task which appellant has undertaken in this phase of its argument are set forth in Best v. Zoning Board of Adjustment, 393 Pa. 106 (1958), where, at page 113, speaking through Mr. Justice Chidsey, the court said:

"One who undertakes to demonstrate the unconstitutionality of a regulatory enactment has a heavy burden of persuasion to discharge. '. . . (W)e can declare an Act of Assembly void, only when it violates the constitution *clearly, palpably, plainly;* and in such manner

as to leave *no doubt or hesitation on our mind.'* (citing cases) The fact that the regulation is in the form of a municipal ordinance rather than a state statute does not alter the burden upon the party asserting its unconstitutionality. '. . . (I)t must be said before the ordinance can be declared unconstitutional, that such provisions are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.' (citing cases) And even '. . . if the validity of the legislative . . . (judgment) be fairly debatable, the legislative judgment must be allowed to control.' (citing cases)"

It is a rule in the construction of zoning ordinances that there is a presumption in the favor of validity which requires that the court in construing the ordinance, if reasonably possible, adopt that interpretation which will prevent any conflict with the Constitution: 26 P. L. Encyc., Municipal Corporation, §449. Also applicable is the principle enunciated by the Supreme Court in Tidewater Oil Company v. Poore, 395 Pa. 89, 97 (1959):

"Zoning classifications are largely within the judgment of the legislative body and the exercise of that judgment will not be interfered with by the courts except in cases where it is obvious that the classification has no substantial relation to public health, safety, morals or general welfare. (citing cases)"

As recently as Glorioso Appeal at 413 Pa. 194, 198, the court reaffirmed the above-stated principles, in the following language:

"One who challenges the constitutionality of a zoning ordinance has no light burden and it is settled that before a zoning ordinance can be declared unconstitutional it must at least be shown that its provisions are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare. If the validity of the legislative judg-

ment is fairly debatable, the legislative judgment must be allowed to control. (citing cases)"

The question then presented by appellant's third point is whether the evidence offered is sufficient to overcome the presumption of validity and to show the ordinance to be lacking such a reasonable relationship to the public health, safety, morals or general welfare as to render it unconstitutional.

In attempting to meet its burden, appellant has traced in its brief the recent land-use development of the properties in the vicinity of its property. This shows the evolution of a relatively compact, commercial area in which is located the subject property, fronting 155 feet on Cochran Road and 205 feet on Roessler Road, with a dwelling house presently located thereon. Most of the tangible evidence of the commercial character of the area appeared after the present owner acquired the property. As appellant points out, the new zoning ordinance, adopted in October 1962, recognized the commercial character of the land, formerly residential, by zoning it "C-2 Light Commercial." Appellant questions why, since there were three gasoline service stations located in the area at the time the new zoning ordinance was passed, was not a gasoline service station made a permitted use in the area under the new ordinance? Appellant also raises a question as to how the presently existing stations were allowed to be constructed in an area then zoned residential.

We see no relevance or materiality in these arguments. What are to be included as permitted uses under various zoning classifications are questions of what best serves the public interest and these are primarily for the decision of the appropriate legislative body. While legislative judgment is never sacrosanct, we must heed what was said in Tidewater Oil Company v. Poore, supra, where the Court, quoting from Bilbar Construction Co. v. Easttown Township Board of Adjustment, 393 Pa. 62, 72 observed at page 97:

" '. . . what serves the public interest is primarily a question for the appropriate legislative body in a given situation to ponder and decide. And so long as it acts within its constitutional power to legislate in the premises, courts do well not to intrude their independent ideas as to the wisdom of the particular legislation. Specifically, with respect to zoning enactments, judges should not substitute their individual views for those of the legislators as to whether the means employed are likely to serve the public health, safety, morals or general welfare.' "

The question as to how three of the other nearby properties came to be used commercially for gasoline service stations raises issues entirely collateral to that presented by this appeal. The determination of these issues would have no basis in the evidence and no legal bearing upon the merits of this case, especially since the entire area was effectively rezoned after the other uses had commenced.

There is no question but that the local legislators recognized the commercial character of the area involved. Their legislative act establishes that they viewed a restricted commercial development as the most desirable use of the area. It is true, of course, that "the highest motives and the exercise of legislative wisdom are not alone sufficient" (c.f. Glorioso Appeal, supra,) but at the same time proper respect for the local lawmaker's special knowledge of all aspects of the community's zoning problems dictates a need for judicial self-restraint in these matters unless the circumstances show the provisions of the ordinance to be "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare."

There is nothing here to show any arbitrary action on the part of the township commissioners in enacting the ordinance. As in Glorioso Appeal, supra, there is nothing to show that the ordinance was directed at the

subject property nor enacted to favor the existing gasoline service stations. No property anywhere in the township bearing a C-2 classification under the ordinance can be used for a gasoline service station. As in the Glorioso case, the inference here is that the present zoning classification was specifically designed as an effort to provide, however belatedly, for an orderly development of the area.

Appellant's argument, in brief, is that if three service stations develop in relatively close proximity to one another, although a municipality later reconsiders its overall plan of zoning and approves a restricted commercial classification which excludes, inter alia, gasoline service stations, nevertheless, it must allow the development of more gasoline service stations. A somewhat similar view was adopted by the lower court in Tidewater Oil Company v. Poore, supra, in sustaining an appeal from the refusal of a building permit on the grounds that the refusal to change a zoning classification was unconstitutional, arbitrary and unreasonable. The lower court said that the township commissioners by their legislative enactments had created an industrial trend by zoning a large area of the county for industrial use, "and it was now too late to stop." The Supreme Court, however, reversed saying, pages 93-4:

". . . Whether that trend actually exists or not may be disputed, but, in any event, it is for the township to decide whether, if the trend exists, it should be halted. In addition to its large manufacturing area, Delaware County is blessed with beautiful home and farm land. The local authorities probably reasoned that industry was creeping up too close to this home land, menacing the health and welfare of its people, . . . . They wished to prevent what they foresaw. There is always a point before a threatened collapse materializes, when something may be done to prevent the break. It may well be that if the legendary additional straw had not

been loaded on to the camel's back, that proverbial dromedary might have lived out a long life, with vertebrae intact, its hump upright and proud of the part it played in helping to transport the world's burdens.

"But, discussion of an industrial trend, and whether it should be stopped, is more academic than practical because we do not see in the record the engulfing industrialization which appeared to have overawed the court below. However, even if we accept its hypothesis, this does not mean that that creeping glacier of industrialization could not be stopped. To accept the court's reasoning would be to say that no municipality has the power to limit an encroaching imperilment. It would be to say that land contiguous to an industrial district, though zoned residential, must now also become industrial because of contiguity alone, and that, through a process of chain reaction, all residential land must eventually become industrial land. But neither law nor logic approves of this chameleon process. So long as a property owner is treated in accordance with standards of justice and fairness, he may not complain that a township, concerned about maintaining its predominating rural and residential characteristics, builds dikes to prevent the spread of a flood of steel and iron."

So also in this case, it appears that the township commissioners determined that in this small area, as far as gasoline service stations were concerned, a saturation point had been reached. If appellant's position is correct, then the number of gasoline service stations in the area (with their remarkable tendency to cluster) would be extremely difficult to control. By their very nature, gasoline service stations are magnets for vehicular traffic flowing to and from highways through access and exit points. It borders on the foolish to say that, under the circumstances presented, zoning an area so as to provide for an orderly commercial development while producing the incidental effect of limiting

construction of additional service stations beyond the three which now front within a short distance upon a busy highway, does not bear a substantial relation to the public safety and welfare of a community, c.f. Sun Oil Company v. Zoning Board of Adjustment, 403 Pa. 409, 413 (1961) ). We say that it does.

Appellant emphasizes the appropriateness of the use of the property as a gasoline service station. The Supreme Court in the Tidewater case, supra, rejected this argument in the following language, page 97:

"The lower court emphasized that the Longbotham Farm was appropriate for use as a tank farm, but an ordinance is not to be declared legally unsustainable merely because it may deprive the owner of the opportunity to devote his land to its most lucrative and profitable use [citing cases]. So long as the property in question may reasonably be used for purposes required by the zoning ordinance, the owner may not legally complain [citing cases]."

The owners of the subject property here can devote their property, formerly zoned residential, to any of the commercial uses permitted by the C-2 classification.

An examination of Coane v. City of Philadelphia, 16 D. & C. 159 (1931), cited by appellant, shows the ordinance there involved to be obviously unreasonable and discriminatory in that it, unlike the comprehensive zoning ordinance here, was just a flat prohibition against competition with existing gasoline stations in a one block area.

The factual situation in Katz v. Marple Township Board of Adjustment, 46 Del. Co. 381 (1959), cited by appellant, differs so markedly from that presented by this case as to nullify its effect upon the present appeal. Furthermore, the appellate cases we have cited above, especially the Tidewater Oil Company case, would seem to cast considerable doubt upon the correctness of the decision in the Katz case.

After a careful consideration of the pleadings, the evidence and the facts we have found, we draw the following

*Conclusions of Law*

1. This court has jurisdiction of the subject matter.

2. The board of adjustment, in disposing of this appeal, did not violate the provisions of the section 3107(f) of the First Class Township Code, as amended by the Act of August 25, 1959, 53 PS §58107(f).

3. The board of adjustment in disposing of this appeal did not give notice of its decision forthwith as required by the provisions of paragraph (h) of section 3107 of the First Class Township Code, as amended 53 PS §58107.

4. The failure of the board to give notice forthwith did not work to the appellant's prejudice.

5. There is no legal basis for granting the appellant the relief requested merely because of the board's delay in giving notice of its decision.

6. The notice of decision contained in the letter from the board's counsel, dated March 12, 1963, was not legally sufficient to inform the appellant of the basis for the board's decision.

7. The answer and return filed by the board gave appellant adequate, legal notice of the basis for the board's decision.

8. The hearing on the appeal before the court was full and complete and the issues presented were clearly understood by the parties.

9. No prejudice resulted to appellant from the deficient notice referred to in conclusion of law no. 6.

10. The Master Zoning Ordinance of the Township of Scott, enacted October 9, 1962, which placed the appellant's property in a C-2 Light Commercial District, did not operate upon the said property in a discriminatory, arbitrary, unreasonable or confiscatory manner.

11. The Master Zoning Ordinance of the Township of Scott, enacted October 9, 1962, bears a substantial relation to the safety and general welfare of the public.

12. The Master Zoning Ordinance of the Township of Scott, enacted October 9, 1962, is constitutional in its application to the property involved in this appeal.

13. Since a gasoline service station was not a permitted use in a C-2 Light Commercial District under the said Zoning Ordinance, the building inspector properly refused to issue appellant the requested permit to allow construction of a gasoline service station.

14. The board of adjustment acted properly in affirming the aforesaid action of the building inspector and in dismissing the appeal of Boron.

## Order of Court

And now, May 29, 1964, the within matter having come before the court for a hearing on the appeal of Boron Oil Company, and thereafter for argument on exceptions of the appellant to an order of this court, dated February 11, 1964, sustaining the Board of Adjustment of the Township of Scott, and dismissing the appeal of Boron Oil, upon careful consideration of the evidence presented and of the arguments and briefs of counsel, and for the reasons set forth in the preceding opinion, it is hereby ordered and decreed:

1. In view of the findings of fact and conclusions of law made herein by the court, the exceptions which relate to the court's failure to make findings and conclusions be and they are hereby dismissed.

2. The order of this court, dated February 11, 1964, affirming the decision of the Board of Adjustment of the Township of Scott and dismissing the appeal of Boron Oil Company is hereby affirmed.