Waterbor, Inc. *v.* Livingood, Appellant.

Argued September 27, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*C. L. Cushmore, Jr.,* with him *Thomas Raeburn White,* and *White, Williams & Scott,* for appellant.

*Raymond K. Hess,* with him *Moss, Rieser & Bingaman,* for appellee.

*Joseph L. Cohen,* Assistant Deputy Attorney General, *Edward L. Springer,* Deputy Attorney General, and *Herbert B. Cohen,* Attorney General, for Commonwealth of Pennsylvania, amicus curiae.

OPINION BY HIRT, J., November 16, 1955:

Plaintiff is in the business of supplying passenger automobiles and trucks to approved applicants on a rental basis. As a member of the Hertz System of car rental organizations plaintiff uses three apparently standardized forms of rental contracts: One form is used for the lease of a motor vehicle for a short period not exceeding 30 days. A second form is employed where the rental period is a specific number of months or years. The third type, in issue here, is used when the rental of the motor vehicle is for an indeterminate period. The vehicles licensed under the first and second classes of contracts are standard models of popular makes of cars selected by plaintiff as best suited to this branch of its business. The motor vehicles necessary to supply the demand for these classes of service are bought outright by plaintiff and constitute a pool from which they are drawn for rental to various customers in succession. The subject matter of a contract of the third class is a vehicle bought by plaintiff on the customer's specifications as to manufacture and model or even specific design. Contracts 1 and 2 provide for the return of the vehicle to the plaintiff at the end of the rental term. Form 3, although it purports to be a "contract of leasing only" provides for the purchase of the vehicle by the lessee on certain contingencies.

The vehicle in the present appeal is an Oldsmobile "Holiday" sedan purchased by the plaintiff on defendant's specifications and leased to him on February 9, 1953. In the contract of the third type the plaintiff leased the vehicle to the defendant for a term beginning with the date of delivery to him "and continuing indefinitely thereafter until terminated as in this agreement provided." The services assumed by plaintiff under the terms of the lease were all inclusive. Among them the plaintiff as lessor undertook to furnish com-

plete garage service for the leased automobile including washing, polishing, oiling, greasing, periodic inspection, and storage. The lessor also agreed to furnish necessary license tags and to make necessary repairs and to keep the vehicle in good running condition throughout the term of the lease. It also was obliged to supply gasoline, oil and lubricants, and all necessary tires and tubes. The lessor was bound to provide a substitute vehicle while the leased car was out of service for repair or any other reason. Lessor also agreed to maintain property and public liability insurance, and in the contract the defendant as lessee was relieved from liability from collision or other damage to the leased vehicle in excess of $50. For these services the "Fixed Rental Charge" which defendant agreed to pay was $27 per week; to this there was an additional charge of 4 cents per mile on the basis of the number of miles the vehicle was driven. The contract by its terms gave either party the right of cancellation on any anniversary of the date on which the vehicle entered the lessee's service. And it provided for the sale of the vehicle by lessor to the lessee on the happening of any one of three contingencies: (1) In the event that the lessee should cancel the lease at the end of any yearly term the lessor agreed to sell and the lessee agreed to buy the vehicle on the basis of a formula for computing the price set forth in the lease; (2) on the termination of the contract at the end of any year by the lessor the lessee was given the option to buy at a price as above computed; (3) On the default of lessee in any of the payments required of him under the agreement the lessor was given the option of terminating the agreement and the lessee was given the right to buy the car.

The defendant paid the rentals reserved in the lease up to August 29, 1953, and then defaulted in all sub-

sequent payments. Defendant surrendered the car to the plaintiff on September 19, 1953. Thereupon plaintiff gave notice to defendant of the termination of the lease and subsequently, when defendant refused to buy the car, brought this action. The damages sought therein were measured, under the terms of the contract, by the original cost price to plaintiff of the automobile, less depreciation credits in an amount agreed upon in the lease and less also $300 which had been deposited by defendant with plaintiff as security for the performance of his obligation under the contract. Defendant was also given credit for the market value of the vehicle when delivered to plaintiff. By application of the above formula $460.08 was found to be the measure of plaintiff's loss and judgment was entered against the defendant in that sum.

The judgment is not questioned as to amount. But it is contended that defendant is not liable at all, on the ground that the contract is unenforcible under §35 of the Motor Vehicle Sales Finance Act of June 28, 1947, P. L. 1110, 69 PS §635, because plaintiff was not licensed as an installment seller of motor vehicles in accordance with the provisions of the Act. 69 PS §604, et seq.

The branch of business conducted on any type of contract by the plaintiff does not bring it within the spirit of the Motor Vehicle Sales Finance Act. In interpreting this Act it is important to consider its preamble. Cf. Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, §54, 46 PS §554. In the Findings and Declaration of Policy which constitute the preamble to the 1947 Act it is stated that the Act is designed "to bring under the supervision of the Commonwealth all persons engaged in the business of extending credit in conjunction with the installment sale of motor vehicles" and to insure "honest and efficient

consumer credit service for installment purchasers . . ." These and like statements in the preamble indicate that the Act is directed at the correction of abuses in installment sales under "fictional instruments" in the form of bailment leases. Plaintiff had bought 185 motor vehicles—passenger cars and trucks—on its customer's specifications which it had rented for indeterminate periods on form 3 leases. In the normal course of this branch of plaintiff's business, when, from use with the lapse of time, the vehicle could no longer be maintained in the condition, mechanically or otherwise, necessary for the high quality of service contemplated by the lease, the plaintiff bought a new car of the same kind which it delivered to the lessee on the same terms. The old car was traded in by the plaintiff to apply on the purchase price of the new. And it is significant that, from plaintiff's actual experience, sales to the lessees result in only from 2 to 3 percent of the transactions where vehicles are rented on this basis. It is apparent, as appellee suggests, from the findings and declarations of the preamble that the Act was directed at excessive interest rates and oppressive transactions in the financing of the *sales* of motor vehicles. Consumer credit in installment sales of motor vehicles is the target of the statute. We agree that "This is a far cry from lease service transactions that existed between the Plaintiff and Defendant."

It is equally clear that the lease in the present case on form 3 does not offend against the letter of the Act. A license under §4 of the Act is required from one "engaged . . . in the business of an installment seller of motor vehicles under installment sale contracts." 69 PS §604. And certainly the present contract between the parties does not come within the definition of §3, sub-section 10, of the Act. It is there made clear that the Act covers contracts only "under

which part or all of the price is payable in two or more scheduled payments." The lease here involved is not an intallment contract within the above definition or in any other sense. When a sale results at the option of a party, who is entitled to elect (and then only does the lease become an agreement of sale), the specified consideration for the purchase is *one* cash payment.

The 1947 Act provides that one engaged in Pennsylvania as an installment seller of automobiles without having obtained a license shall be guilty of a misdemeanor and shall be subject to both fine and imprisonment. Since this is a penal statute if there were any doubt as to the validity of the conclusion of the lower court in construing the Act, it would be dispelled by the rule of strict construction. Statutory Construction Act, supra, art. IV, §58, 46 PS §558. *La Brum et al. v. Com. Title Co.*, 358 Pa. 239, 56 A. 2d 246.

The case was properly disposed of in the court below.

Judgment affirmed.