## Somerset Mack Sales & Service, Inc. v. Bracken

*Thomas J. Cook,* for plaintiff.
*H. Edwin Mountford,* for defendant.

COFFROTH, *P.J.,* October 8, 1981—This case is here on defendant's motion for compulsory nonsuit

and on the merits. At the close of plaintiff's evidence in a nonjury trial, the nonsuit motion was made and taken under advisement; defendant then put in his case and the trial was completed subject to later ruling on the nonsuit motion and final decision.

This is an action in assumpsit brought under the Motor Vehicle Sales Finance Act of 1947, P.L. 1110 69 P.S. § § 601 et seq, hereinafter referred to as the act, on a guaranty of a contract for sale of a motor vehicle to obtain a deficiency judgment following default in the sale contract, repossession and resale of the vehicle. The action was originally brought against both the buyer and the guarantor; plaintiff has obtained a default judgment against the buyer but the action is contested by and now continues against the guarantor (herein called defendant).[1]

The nonsuit motion seeks dismissal for the following reasons:

(1) The contract is unenforceable under the act because: (a) plaintiff has failed to prove that Mack Financial Corporation, the sales finance company,

---

1. Although the contract is entitled "Personal Guaranty" and is described therein as a "guaranty", it is probably a contract of suretyship by virtue of the Act of 1913 P.L. 971, §1, 8 P.S. §1, for want of language expressly negating suretyship as prescribed by that statute. On the difference between suretyship and guaranty, see: PLE, Suretyship §3 and PLE, Guaranty §1; Summary of Pennsylvania Jurisprudence, Surety and Guarantor §§1-3.

On the effect upon the liability of a surety or guarantor of a judgment by the creditor against the principal debtor, see: PLE, Suretyship §113; PLE, Guaranty §10; Canton Hardware v. Mitchell, 27 D. & C. 2d 48 (1961); compare Arnold Palmer v. Baltzer and McIntyre, 32 Somerset Legal Journal 168 (1976) and Summary of Pennsylvania Jurisprudence, Surety and Guarantor § §48 et seq on availability to surety and guarantor of principal's defenses.

was licensed as required by the act, (b) failure of plaintiff to prove the essentials of a lawful repossession under the act, and (c) failure of plaintiff to prove delivery to defendant of a copy of the contracts and to prove notice to defendant of the assignments of the contracts in suit as required by the act, and

(2) If the contract is enforceable, the repair costs and floor plan financing costs after repossession and resale are not recoverable under the act as part of a deficiency judgment.

As to the merits, defendant has denied virtually all of the complaint's averments, and in new matter has alleged procurement of the guaranty agreement by fraud and failure of plaintiff to make any demand for payment.

From the evidence we find the following

## FACTS

On or about October 14, 1977, the son (Daniel E. Bracken) of defendant (Daniel L. Bracken) entered into a written installment sale contract with plaintiff to buy a used Autocar diesel dump truck from plaintiff, a dealer in new and used trucks, for the sum of $33,500, $4,500 down and the balance of $29,000 plus finance charge of $6,959.92, a total of $35,959.92 in 24 equal successive monthly installments beginning November 14, 1977, until paid. In order to finance the truck for the buyer, the sales finance company (Mack Financial Corporation, hereinafter called Mack) demanded additional security; accordingly, the buyer's father (defendant) signed and delivered to Mack through plaintiff a written "Personal Guaranty" contract dated October 14, 1977, agreeing to pay the buyer's indebtedness under the sale contract. On the same date, plaintiff assigned the sale contract to Mack.

A copy of the sale contract and written notice of the assignment were given to the buyer; a copy of the guaranty was given to defendant but he was not given a copy of the sale contract nor written notice of the assignments, but he knew of them and made no request then or later for them.

The buyer defaulted in making installments payable under the sale contract and, after protracted and unsuccessful efforts by negotiation with the buyer by telephone calls to his home (where he lived with defendant) and otherwise, the truck was repossesed at Mack's direction by employes or agents of plaintiff early in August, 1978, and was brought to plaintiff's place of business in Somerset County, after which Mack on August 8, 1978 gave written notice to both the buyer and defendant of the repossession which stated that the vehicle was stored at plaintiff's place of business, that it could be redeemed at any time prior to August 23, 1978, "after which date it will be offered for sale until sold" at the storage location. The notice also stated the amounts of the gross unpaid balance, the rebate for unearned finance charge, the net unpaid balance, late charges, and the total redemption amount of $29,335.59.

After expiration of the redemption period without action by either the buyer or defendant, Mack held a public sale of the vehicle, in virtually reposessed condition, at the storage location, after published newspaper notice of sale, at which no buyers appeared. On or about September 8, 1978, on demand of Mack, plaintiff paid to Mack the redemption amount of $29,335.59 and the sale contract was reassigned to plaintiff and defendant's personal guaranty contract was also assigned to plaintiff; apparently no notice of those assignments was given to defendant.

Thereafter, plaintiff continued to try to find a buyer for the vehicle, without success until January, 1980, when it was sold at private sale to National Truck Sales, Butler, Pa., for $15,000. During the storage period, the vehicle was kept at plaintiff's place of business in Somerset County where plaintiff made repairs to the truck in the amount of $1,710.81; plaintiff also paid floor plan finance charges on the vehicle of $4,034.91. The amount sued for as deficiency judgment is calculated by plaintiff at $29,335.59 paid to the finance company, plus $5,745.72 for floor plan interest and repairs, a total of $35,081.31, less $15,000 realized from the resale, a total of $20,081.31.

There is evidence that plaintiff at the time of the transaction was licensed as a motor vehicle installment seller under the act, but no evidence that Mack was licensed as a sales finance company under the act.

## DISCUSSION

### Enforceability of Contracts

The question here is whether a motor vehicle seller must prove as an essential element of his cause of action, in a suit against the buyer's guarantor on his guaranty of the installment sale contract, that the sales finance company through whom the vehicle was financed was licensed as required by subsection 2 of section 4 of the act, 69 P.S. §604. We conclude that such proof is not required in this action.[2]

---

2. Plaintiff did not plead any licensure; defendant filed no preliminary objections to the complaint, nor did he raise the issue of licensure, either of the seller or the sales finance company in his answer. The issue was raised for the first time at

Legally required licensure of a plaintiff suing on a contract created in the business or activity required to be licensed is generally regarded as a matter affecting plaintiff's capacity to sue, rather than as an essential element of his substantive contractual cause of action. As stated in Goodrich-Amram 2d §1017(b):14, at page 89:

"Capacity has nothing to do with the right of plaintiff to recover on the merits. It refers to the personal disability of a plaintiff by virtue of some statute or by reason of the fact that plaintiff is not sui juris.

"Illustrations of lack of capacity include failure of the plaintiff to register under the Fictitious Names Act or other *licensing statute*, and absence of authority of a fiduciary to sue." (Emphasis added.)

Lack of capacity is waived if not raised by preliminary objections in the form of a petition under Civil Rule 1017(b)(5), or in a responsive pleading: Com. v. Philadelphia Gas Works, 484 Pa. 60, 67, 398 A. 2d 924 (1979); Erie v. Coal Operators Casu-

---

trial on the motion for compulsory nonsuit. In the latter motion, defendant also challenged plaintiff's failure to prove its own licensure as seller; we granted plaintiff leave to reopen his case to prove the seller's licensure. Where the opponent is not prejudiced, it is within the court's discretion to allow a party to reopen his case to present important evidence or to prevent injustice, or for other good reason. See: Com. v. Evans, 488 Pa. 38, 45, 410 A. 2d 1213 (1980); In Re JEF, 487 Pa. 455, 409 A. 2d 1165 (1979); Com. v. Hegland, 34 Somerset 231, 234, 4 D. & C. 3d 718, 722 (1976); Com. v. Johnson (No.2), 31 Somerset 196, 206 (1975); compare Tice v. Easterday, 148 Pa. Superior Ct. 457, 25 A. 2d 754 (1942). Sudden death procedures, prevalent at common law, are against public policy today. See: Hemminger v. Benford, 34 Somerset 391, 397 (1978); Com. v. Walker (No. 2), Somerset 326, 329 (1979).

alty Company, 441 Pa. 261, 272 A. 2d 465 (1971); Horan v. Weiler, 41 Pa. 470, 6 Atl. 548 (1862); Kimmel v. County Commissioners, 33 Somerset 53 (1975); Goodrich-Amram 2d §1032:3.

In this case, however, we have a special statutory provision prescribing the effect of non-licensure upon contractual liability, in section 35A of the act, 69 P.S. §635 which provides as follows:

"§635 Contracts unenforceable in Pennsylvania

"A. No obligation of the buyer of a motor vehicle under an installment sale contract which was consummated within the Commonwealth of Pennsylvania shall be enforceable in the Commonwealth of Pennsylvania, wherein the seller was not licensed, as required under the provisions of this act, at the time such seller entered into such installment sale contract, or wherein the holder was not licensed under the provisions of this act at the time he acquired such contract. The buyer under such contract shall be entitled to cancellation of the contract, release of all liens against the motor vehicle sold under such contract and against any collateral security owned by the buyer or his sureties and guarantors, upon payment or tender of payment to the holder of the principal amount financed as set forth in the contract, less all payments on account of such obligation exclusive of down payment which had been made prior thereto."

We construe the foregoing section as making licensure (capacity to sue) an essential element of plaintiff's cause of action in this litigation.[3]

---

3. Compare Spickler v. Lombardo, 32 Somerset 16, 29 (1976), holding that statutes of limitation and statutes of frauds which make "not enforceable" claims which do not comply with those statutes, in effect establish compliance as a

The foregoing conclusion applies to plaintiff's licensure. Compare Waterbor v. Livingood, 179 Pa. Superior Ct. 610, 117 A. 2d 790 (1955); Smith v. Gold, 7 D. & C. 2d 745 (1955). The question is: Does it also apply to the sales finance company's assignee, in which the latter is not a party? Section 35A supra expressly applies when "the seller was not licensed . . . . at the time such seller entered into such installment sale contract, or wherein the holder was not licensed . . . at the time he acquired such contract . . . " The contract is unenforceable under that section for nonlicensure only of the "seller" and a "holder," so we must look to the statutory definitions of those terms.

Section 3[4] of the act defines a *seller* as "a person engaged in the business of selling, hiring or leasing motor vehicles under installment sale contracts or any legal successor in interest to such person." Section 3[5] of the act defines a *holder* as "any person, including a seller, who is currently entitled to the rights of a seller under an installment sale contract." From this it is clear that plaintiff is both a seller and a holder within the act and that the sale contract or contracts on which he sues are unenforceable under § 35A supra if *he* is not licensed. It

substantive element of the cause of action. See also: Mason-Heflin Coal Company v. Currie, 270 Pa. 221, 223, 113 Atl. 202 (1921); Commercial Credit v. Pasquarello, 8 D. & C. 3d 458, 463-4 (1978) discussing and following Spickler v. Lombardo supra.

Compare also Real Estate Brokers License Act, 63 P.S. §§ 431 et seq, § 16 of which (36 P.S. § 446) expressly forbids suits for compensation for real estate broker's services by unlicensed persons. See: Custis v. Pennsylvania Salt Company, 351 Pa. 148, 153-4, 40 A. 2d 481 (1945); Brown v. Kleinfelter, 267 Pa. Superior Ct. 144, 147-8, 406 A. 2d 560 (1979); Burke v. Israel, 264 Pa. Superior Ct. 286, 399 A. 2d 779 (1979); Sherman v. Welsh, 87 Pa. Superior Ct. 282, 290 Atl. 87 (1926).

is not entirely clear from §3[4] whether Mack, which during the pendency of this action is not a legal successor to plaintiff seller but was previously such a successor, is a seller; but it is clear from section 35A that the term "seller" is restricted to the party who "entered into such installment sale contract" which in this case can mean only plaintiff, not defendant. It is also clear from section 35A, that the term "holder" refers to the party who "acquired such contract," which could mean either plaintiff or Mack. Since Mack is only a holder, not a seller, we must refer back to section 3[5] defining holder as one who is *currently* entitled to the rights of a seller under an installment sale contract" (Emphasis added.); Mack is not so entitled currently and is therefore neither a holder nor a seller under section 35A, and plaintiff is not required to prove Mack's licensure. Reading the foregoing statutory sections together in this manner leads to the sensible conclusion that section 35A is aimed at capacity to sue of the parties to the litigation only.

That conclusion does not mean that Mack goes scot-free if it was not licensed when it acquired the contracts in suit; on the contrary, that corporation is subject to the criminal penalties for nonlicensure provided in section 37A of the act, 69 P.S. §637A. The conclusion means merely that plaintiff must take the consequences of its own nonlicensure, without being responsible here for its sales finance company's nonlicensure. That is the fairest result, and most likely in keeping with the legislative intent.

Defendant cites Jim Bulow Motors v. Beeman (No. 3), 34 Somerset 16 (1977) as holding that plaintiff must allege and prove licensure of both seller and finance company in order to recover under the act. Although there is discussion in that

opinion concerning licensure of both seller and finance company, the conclusion of the court (Shaulis, J) is phrased as follows (20):

"The plaintiff's complaint contains no allegation that either Jim Bulow Motors or IHCC is licensed pursuant to the provisions of MVSFA [the Act]. Such an omission is fatal to the plaintiff's complaint. . . . Since a license is required by MVSFA in order to enforce the obligation of the buyer under an installment sale contract, it is material that the seller allege *he* is licensed." (Emphasis added.)

From the foregoing language, it appears that the preliminary objection was sustained only as to plaintiff-seller's licensure, without requiring averment and proof by plaintiff of the finance company's licensure.

Finally, since the effect of section 35A of the act (enforceability) is to make plaintiff's incapacity to sue for want of licensure an essential element of plaintiff's cause of action, the waiver of the issue for failure to raise it before trial is inapplicable under Civil Rule 1032(1): Goodrich-Amram 2d §1032:1. Compare Act §32, 69 P.S. §632.[4]

The next issue involving enforceability is the alleged insufficiency of proof of a legal repossession under section 23 of the act. The defense asserts that the evidence of repossession is impermissibly vague in that plaintiff was unable to identify precisely the persons who did the repossessing and

---

4. From our conclusion as to the meaning of Act §35A, it follows that, although nonlicensure of plaintiff infects its cause of action against the buyer and his guarantor, nonlicensure of plaintiff's assignor (Mack) does not infect the substantive validity of the assignments by Mack to plaintiff who as assignee sues in its own name as real party in interest. See Hay v. Lucente et al, 37 Somerset 9, 20 (1978).

the facts of when, where, how, etc. The evidence shows that repossession was effected without legal process either by plaintiff's "own employees or our agents." It does not clearly appear in the record that repossession was made without breach of the peace or by officials or full time employees of plaintiff or of the sales finance company, without which the repossession might be illegal. But illegality is an affirmative defense which under Civil Rule 1030 must be pleaded in new matter by defendant, and no such defense is pleaded. Whether defendant's failure to plead defects in repossession is a waiver of the illegality depends on whether the defense falls within the exceptions enumerated in Civil Rule 1032: Krock v. Somerset State Hospital et al. (No. 2), 32 Somerset 236, 240 (1976); Goodrich-Amram 2d §§1032:1 et seq.[5] In general, "defenses not pleaded cannot be proven" unless they "go to the basis of the claim." Goodrich-Amram 2d §1032:3. Ordinarily, the burden of proof follows the burden of pleading: McCormick On Evidence (2d Edition, West 1972) §337 at page 785. The general rule of contract law is that a breach of contract

---

5. Civil Rule 1032 provides as follows:

"Rule 1032. Waiver of Defenses. Exceptions

"A party waives all defenses and objections which he does not present either by preliminary objection, answer or reply, except

(1) that the defense of failure to state a claim upon which relief can be granted, the defense of failure to join an indispensable party, and the objection of failure to state a legal defense to a claim may also be made by a later pleading, if one is permitted, or by motion for judgment on the pleadings or at the trial on the merits, and

(2) that whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter or that there has been a failure to join an indispensable party, the court shall dismiss the action."

claimant may recover upon proof of a substantial or material breach thereof, even though details of performance by claimant are lacking, absent some provision of the contract or statute making such details essential: PLE, Contracts §§336 and 351. Similarly, the substantial performance principle governs the defendant's contractual liability; as stated in Lampman v. Reed, 30 Somerset 306, 319 (1975):

"A party is discharged from his obligation to perform a contract only by a *material* or *substantial* breach by the other party. Restatement of Contracts §§397 and 274), and is entitled to rescind only if the breach is *material* and *substantial*. PLE, Contracts §637 [and 351]." (Emphasis in original.)

See also Stout v. Universal Underwriters, 491 Pa. 601, 604, 421 A. 2d 1047 (1980). There being no contrary provision in the contracts nor in the statute making the contracts in this case unenforceable for want of detailed compliance with section 23 of the act relating to repossession, the foregoing principles of contract law apply. We cannot consider the possible defects in repossession procedure here involved as so basic and fundamental to defendants substantial rights as to discharge him from the contracts or to entitle him to rescind them. This conclusion is consistent with the legislative intent of section 35A of the act establishing unenforceablility only for nonlicensure; omitting mention of any other cause impliedly excludes statutory unenforeceability for any such other cause: PLE, Statutes §132. Except to the extent modified by statute, ordinary contract law is applicable. Consequently, the burdens of both pleading and proof of illegality of the contracts by reason of defective repossession rest upon defendant under Civil Rule

1030. Compare Phoenix Brewing Company v. Rumbarger, 181 Pa. 251 (1897).

Accordingly, defendant's failure to plead illegality waives the issue and it is too late to raise it at trial. Section 32 of the act, 62 P.S. §632, precluding waivers in an installment sale contract does not preclude that sort of judicial waiver. Compare Spickler v. Lombardo, supra, 30.[6]

Moreover, even if defendant had pleaded and proved defective repossession, plaintiff's claim would not be defeated unless the illegality was material or substantial as above discussed.[6a]

The third claim of unenforceability concerns plaintiff's failure to prove that defendant was furnished a copy of the sale contract and notice of the subsequent assignments of the sale contract and the guaranty contract. Undoubtedly, defendant was entitled to them; under section 3[3] of the act, a surety or guarantor of the buyer has a buyer's rights under the act; section 13C of the act mandates that a copy of the sale contract be furnished the buyer (and, therefore, defendant also), and section 16C requires written notice of any assignment of the sale contract and section 16E requires such notice of reassignment. These sections were not, but should have been, complied with.

---

6. Act §32 provides as follows:

"§632. Buyer's waiver of statutory protection

"No act, agreement or statement of any buyer in any installment sale contract shall constitute a valid waiver of any provision of this act intended by the Legislature for the benefit or protection of retail installment buyers of motor vehicles."

6a. Compare Roxy v. Moore, 180 Pa. Superior Ct. 603, 122 A. 2d 87 (1956) in which the sale contract had not been completed as mandated in the statute. The court held the contract unenforceable for illegality.

As in the case of repossessory defects above discussed, and for the same reasons, the burdens of pleading and proof of these violations rest on defendant. Here, however, defendant has carried those burdens. But no prejudice or materiality is shown to defendant's substantial rights and we therefore do not regard the violations as sufficient to render the contracts sued on as unenforceable; those are not ground for unenforceability either under §35A of the act or under the law of contracts.

Again, refusing to visit upon plaintiff adverse civil consequences from its failure to comply with these statutory mandates does not in any way relieve plaintiff from the criminal penalties to which it may be subject under section 37B and C of the act. In fact, the existence of those penalties reinforces the conclusion that the violations or alleged violations under discussion were not intended to alter ordinary civil liabilities. See: Cosco v. Hachmeister, 396 Pa. 288, 295, 152 A. 2d 673, (1959); Phoenix Brewing Company v. Rumbarger, supra, 258.

Elements Of Damage

Section 23E of the act, 69 P.S. §623E makes the buyer liable for certain costs incurred in retaking, storing and repairing a repossessed vehicle, as follows:

"E.  When repossession of a motor vehicle which is the subject of an installment sale contract is effected, otherwise than by legal process, the buyer shall be liable for costs incurred by the holder in retaking, storing and repairing such motor vehicle only when all of the following conditions prevail:

1.  When default exceeds fifteen (15) days at the time of repossession, and

2.  When such costs represent actual, necessary and reasonable expenses incurred by the holder in retaking, storing and repairing the motor vehicle, excluding any costs incurred in retaking which are charges for services of persons who are regular full time employes of the holder, and

3.  When such costs are supported by receipts or other satisfactory evidence of payment and records of the holder show detailed information as to nature of each item of expense, the amount thereof, the date of payment, and to whom paid."

Section 27 of the act then authorizes recovery by the seller of a deficiency judgment against the buyer and his surety or guarantor for the insufficiency (if any) of the proceeds of resale to pay: "the expenses of . . . [resale], the expenses of retaking and storing the motor vehicle to which the seller or holder may be entitled and the net balance due on the contract, plus the amount of any accrued default charges authorized by this Act . . . " This action is for such a deficiency judgment, but we may grant such judgment only for the items enumerated in the statute.

No amount is specifically claimed here for expenses of resale, and no claim is made for the expenses of the retaking. Plaintiff claims repairs to the vehicle in the amount of $1,710.81 made during the storage period (from repossession in August, 1978 until resale in January, 1980) as found from time to time to be necessary. Defendant challenges the repairs because of the long period of time over which they were made, and argues that the claim for repairs would be restricted to those made within 45 days after repossession. The act establishes no time limit for repairs, and the evidence establishes their reasonableness as to both necessity and

amount. Accepting (as we do) plaintiff's evidence that resale could not reasonably be accomplished prior to January, 1980 and that the storage period was therefore reasonable, the making of the repairs over that period of time was reasonable, and we therefore reject the defense contention. All the conditions for recovery of repairs specified in section 23E supra have been established.[7]

No amount is claimed for vehicle storage, but a claim is made for the costs of financing plaintiff's floor plan of the vehicle during the storage period on the theory that such costs can be classified as expenses of storage. We disagree. We cannot by any stretch of language convert financing costs (which are not amoung the finance charges authorized by the act in section 19), which are measured by the market in interest rates, into storage charges which must be measured by the reasonable and customary charges for a facility which provides shelter and safety for the vehicle.

Nor is any claim made for acrued default charges beyond the sum of $343.73 stated in the redemption notice; that charge has been neither explained nor challenged and we therefore accept it as the extent of the default charges allowed under section 21 of the act as the parties apparently have done.

---

7. It should be noted that the buyer's liability for repairs is provided for in section 23E of the act quoted supra, and in sections 24 and 25 of the act relating to reinstatement, redemption and termination of contract after repossession, but is not mentioned specifically in §27 which provides for the deficiency judgment. Nevertheless, we read the sections together and treat §27 as including within the deficiency judgment liability for the repairs, otherwise §23E would be deprived of full effect and injustice would be done the seller or holder. See Mayo v. Lindenmuth, 33 Lehigh 73 (1968).

## Demand

Defendant pleads as an affirmative defense that no demand was made upon him for payment of his guaranty. Such a demand is not a condition precedent to contractual liability unless demand is required by statute or by the terms of the contract. See: PLE, Contracts §333: Restatement of Contracts §§264 and 337. Here the statute requires no demand for payment. The only similar notice required is the redemption notice which was given. See Jim Bulow Motors v. Beeman (No. 2), 33 Somerset 332 (1977). Nor does either of the contracts in suit require a demand; in fact, the guaranty contract expressly provides that: "The undersigned expressly waive(s) . . . demand . . ."

## Fraud

Defendant also pleads in new matter a claim for rescission of the contract on the ground of fraud, that he was not permitted to read the contract, that it was not filled in when he signed it, that the nature of the agreement and his liability thereon were misrepresented when he was told among other things that it was merely "so that he could receive mail for, and pass information on to, his son [buyer]." We are unpersuaded by defendant's testimony and resolve the issue of credibility against him. Moreover, his testimony lacks the corroboration essential to constitute evidence which is "clear, precise and convincing, and of satisfactory character" to set aside a written instrument: Brown v. Shockey, 28 Somerset 288, 297 (1973); compare Spickler v. Lombardo (No. 4), 36 Somerset 44, 71, 11 D. & C. 3d 627 (1978), at note [14].

## CONCLUSION

Accordingly, we sustain the motion for compul-

sory nonsuit as to plaintiff's claim for floor plan financing costs incurred during the storage period, but otherwise overrule the motion.

## NONJURY DECISION

Now, October 8, 1981, the verdict is for plaintiff for $16,046.40 and costs of suit. Unless exceptions are filed within ten days the prothonotary shall on praecipe enter judgment on the verdict as provided in Civil Rule 1038.